FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 DEC 12 AM 9 17

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| LEE KEMPERT, <br><br> Plaintiff, <br><br> v. <br><br> JENNIFER KAY STONE, <br><br> Defendant. | Case No. 2:12–CV–00199–ABJ |

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

From 2004 to 2011, Plaintiff was a county employee acting as the Albany County drug court coordinator. He was fired in 2011, and he has brought this § 1983 cause of action claiming that his procedural due process rights and First Amendment rights have been violated. Defendant supervisor filed the instant motion for summary judgment. For the following reasons, the Court GRANTS Defendant's motion and DISMISSES all of Plaintiff's claims.

1

## BACKGROUND

In 2004, Albany County formed the Albany County Adult Drug Court ("ACADC"). The ACADC is a court supervised treatment program created under the auspices and authority of the Wyoming Department of Health pursuant to Wyoming Statute §§ 7-13-1601, *et seq.* Wyo. Stat. Ann. § 7-13-1609 created the position of program coordinator, and Albany County appointed Plaintiff Lee Kempert ("Plaintiff") to that position in 2004. He remained in that position until his termination on March 4, 2011. The circumstances surrounding his termination give rise to the Plaintiff's claims in this case.

As the ACADC Coordinator, the Plaintiff had many duties. His position's overall purpose was to plan, coordinate, and manage ACADC programs, office operations, and personnel. ECF No. 23-1 at 8. Specifically, he was to supervise and assist in the evaluation of ACADC personnel and ensure departmental compliance with federal and state statutes, regulations, and policies. *Id.* He was also supposed to develop and administer the departmental budget and monitor expenditures. *Id.*

In addition to Plaintiff's job description, Albany County provided him with a policy and procedure manual that explained some general aspects of his employment with the County. The policies at issue were adopted in early 2005, and Plaintiff signed a form acknowledging that he read and understood the manual in early 2008. ECF No. 19-1 at 8-11. Both the acknowledgement form and policies at issue state that Plaintiff's employment was "at will" and subject to termination at any time without notice or opportunity for a hearing. *Id.* at 8-10.

In the latter half of 2010, Defendant Jennifer Kay Stone ("Defendant") was an Albany County Deputy Prosecuting Attorney and was assigned to the ACADC. In June 2010, the Plaintiff was accused of sexual harassment by a drug court participant, and, as a result, the

ACADC Management Team imposed a specific Plan of Action on the Plaintiff. Defendant Exhibit A. As part of that Plan of Action, the Defendant became the Plaintiff's direct supervisor. *Id.*

In early 2011, the Plaintiff became suspicious that his subordinate, KM, was falsely reporting the hours she claimed to have worked. Plaintiff thought that it was his responsibility to report the suspected fraud, and he reported his suspicions to the Defendant, his supervisor, around February 14, 2011. ECF No. 21-1 at 52-53, 43. On February 18, the Defendant received a complaint from a Casper probation officer that the Plaintiff had made inappropriate comments regarding a former drug court participant. *Id.* at 20, 24, 37. On February 23 or 24, the Defendant held a joint meeting with the Plaintiff and KM to address the alleged false reporting. *Id.* at 37, 43. Shortly thereafter, KM accused the Plaintiff of making sexual comments to her. *Id.* at 25, 37.

Shortly after 8:00 a.m. on March 4, 2011, the Defendant presented the alleged hours falsification, the alleged sexual harassment of KM, and the Casper probation officer's complaint to the ACADC Management Team during an executive session. *Id.* at 37. During that meeting, the ACADC Management Team voted to recommend that Plaintiff's employment be terminated. *Id.* at 35, 38. The Albany County Commissioners accepted that advice and removed Plaintiff from his position during their meeting later that same morning. *Id* at 29; ECF No. 19-1 at 4. Later that day, Defendant informed the Plaintiff that he was terminated from his position as the ACADC Coordinator. Defendant Exhibit K; ECF No. 21-1 at 44. Plaintiff instituted this action on September 4, 2012, and, after conducting discovery, the Defendant filed the instant motion for summary judgment, ECF No. 18.

**STANDARD OF REVIEW**

3

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment,

the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

Plaintiff has filed this action under 42 U.S.C. § 1983 alleging violations of his due process and free speech rights. "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). As such, it "solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights. Section 1983 does not provide a cause of action for violations of state statutes." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004). Thus, the Court will begin by analyzing the sources of substantive law which were allegedly violated.

### I. Plaintiff's Procedural Due Process Claim

Plaintiff's Complaint alleges that Defendant violated his Due Process rights by not providing him with a *Loudermill*-style pre-termination hearing. Defendant's Motion for Summary Judgment argues that Plaintiff did not have a protected property interest in continued employment as the ACADC Coordinator; therefore, no pre-termination hearing was necessary.

The Fourteenth Amendment prohibits the government from depriving an individual of his property "without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process

ensures the state will not deprive a party of property without engaging fair procedures to reach a decision." *Hyde Park Co. v. Santa Fe Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007). "In the employment context, a property interest is a legitimate expectation in continued employment." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1245 (10th Cir. 2008) (internal quotations omitted). If the individual did have a protected property interest, a pre-termination hearing is generally required. *See Brammer-Hoelter*, 492 F.3d at 1209.

It is undisputed that Plaintiff was not granted a pre-termination hearing. Thus, the issue is whether the Plaintiff had a legitimate expectation in continued employment as the ACADC Coordinator. The Court determines whether such a property interest exists by looking at state law. *Hesse*, 541 F.3d at 1245.

> Under Wyoming law, "[p]roperty interests in continued public employment are created and defined by independent sources such as state statutory law, regulations or the terms of employment." *Lucero v. Matthews*, 901 P.2d 1115, 1119 (Wyo.1995); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577-78, (1972) (explaining state statutes or terms of appointment may provide employees with protected property interests in employment). Essentially, a Wyoming public employee whose employer may fire him at will for any reason or for no reason at all does not possess a property interest in continued public employment, but an employee who may be fired only for cause, such as "[a] nonprobationary, as well as a tenured, public employee[,] is entitled to written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Lucero*, 901 P.2d at 1120 (explaining a nonprobationary employee whose job was statutorily and constitutionally protected was entitled to notice and an opportunity to be heard and could only be fired for cause).

*Id.*

First, the Court must examine whether Wyoming statutes created a protected property interest. The Plaintiff's position and duties as the ACADC coordinator were created by Wyo. Stat. Ann. § 7-13-1609:

> (a) Each applicant seeking to establish a program shall create a program team, consisting of the following members, all of whom shall be appointed by the governing body of the applicant, subject to the individual consent of each appointee:
> . . .
> (vi) The program coordinator;
> . . .
> (c) Each program shall have a program coordinator who shall be responsible for the general administration of the program.

Further, Wyo. Stat. Ann. § 7-13-1606(b) specifically designates that "[a]ll program employees of a program shall be employees of the applicant that was awarded a grant under this section" except for judicial branch and department of corrections personnel. Neither of these statutes, nor in related sections, state that a program coordinator can only be removed for "cause." This is in direct contrast to the nonprobationary deputy sheriff position at issue in *Lucero*. In that case, the statute creating the deputy sheriff's position specifically stated that "[a] deputy sheriff shall not be discharged from employment, reduced in rank or suspended without pay **except for cause and after notice and opportunity for a hearing**." *Lucero*, 901 P.2d 1119-1120; Wyo. Stat. Ann. § 18-3-611 (emphasis added). Thus, Plaintiff did not have a protected property interest in his employment created by statute because the statute creating the program coordinator position did not contain "for cause" language or a removal process.

Second, the Court must examine whether Wyoming regulations created a protected property interest. Plaintiff does not specifically identify any language in any regulations that created a protected property interest in continued employment, and Defendant does not argue against any such regulations. Therefore, the Court can only conclude that no Wyoming regulations created a protected property interest.

7

Third, the Court must examine whether the terms of Plaintiff's employment created a protected property interest. Plaintiff cites generally to grant applications, as terms of his employment, that may create a general expectation of continued employment. However, he does not cite to any specific language, nor can the Court find any. The terms of his employment, however, can be found in the Albany County Policy and Procedures Manual and the Acknowledgement that Plaintiff signed. While there is no formal contract between Plaintiff and Albany County, the Wyoming Supreme Court has

> found that an employee handbook or personnel manual may supply terms for an implied in fact contract of employment. *See Wilder*, 868 P.2d at 217 (discussing enforceability of an implied in fact contract of employment). In particular, a systematic discipline procedure or other language in an employee handbook implying termination may be for cause only may defeat the rebuttable presumption that employment is at will. *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo.1993).
>
> Employers do have a means to avoid formation of an implied in fact contract of employment while still presenting the employee with useful information about required performance on the job. The employment at will presumption of Wyoming law may be sustained when unambiguous language disclaiming the formation of a contract is sufficiently conspicuous and present in documents that would otherwise comprise terms of an implied in fact contract of employment. *Sanchez*, 855 P.2d at 1259; *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 988 (Wyo.1991) (*McDonald II*).
>
> When properly drafted, a sufficient disclaimer constitutes an express statement in the employment application and subsequent relevant documents, such as an employee handbook, that places the employee on notice that general statements or conduct do not promise employment security and are not to be relied upon by the employee. 1 Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 4.25 at 310 (3rd ed. 1992). A conspicuous and unambiguous disclaimer would then make any reliance on the subsequent statements of the employer unreasonable.

*Kuhl v. Wells Fargo Bank, N.A.*, 2012 WY 85, 281 P.3d 716, 724-25 (Wyo. 2012)

In the instant case, Guideline 101 of the Albany County policy manual states that "[e]mployment with Albany County is 'at will.' This means that any term and/or condition of employment may be changed with or without cause and with or without notice, including but not

limited to termination . . ." ECF No. 19-1 at 8. The "Termination and Discipline" guideline of the policy manual re-emphasizes that employment is at will and subject to termination without notice or cause. *Id.* at 9. Furthermore, the Plaintiff signed an Acknowledgment of Albany County Policy and Procedures Manual which specifically states that, by signing, he "underst[ood] that [his] employment with Albany County [was] 'at will.' This means that my terms and conditions of employment may be changed with or without cause and with or without notice, including but not limited to termination." *Id.* at 10.

In his deposition, Plaintiff acknowledged that his employment was "at will," but he claims that he thought that "at will" meant "for cause." Claiming that he misunderstood the term does not relieve Plaintiff of its legal impact, especially after he signed the Acknowledgement. *See Herling v. Wyoming Machinery Co.*, 304 P.3d 951, 961 (Wyo. 2013). "[A] Wyoming public employee whose employer may fire him at will for any reason or for no reason at all does not possess a property interest in continued public employment." *Hesse*, 541 F.3d at 1245. Plaintiff's employment as the ACADC coordinator falls squarely in this category. Therefore, Plaintiff did not have a protected property interest in continued employment. Accordingly, he fails step one of the procedural due process test, and no notice or pre-termination hearing was necessary. Defendant's Motion for Summary Judgment as to Plaintiff's § 1983 procedural due process claim is therefore **GRANTED**, and Count 1 of Plaintiff's Complaint is **DISMISSED**.

## II. Plaintiff's Protected Speech Claim

Count II of Plaintiff's Complaint alleges that Defendant deprived him of his civil rights by retaliating against him for reporting a crime. Plaintiff's Complaint alleges that this is a "violation of well-established public policy of the State of Wyoming." Complaint at ¶ 54. Since this is a § 1983 action, Plaintiff's Response has characterized his claim as retaliation against a

public employee who engaged in protected speech to a prosecutor. Thus, he claims a violation of his First Amendment free speech rights instead of a violation of Wyoming public policy. Defendant argues that Plaintiff's speech was made pursuant to his official duties and that he thus fails the *Garcetti/Pcikering* test.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees. To achieve this balance in analyzing public-employee free speech claims," courts have employed the five-part *Garcetti/Pickering* test. *Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012) (internal quotations and citations omitted).

> The test comprises five elements, called "prongs": (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. The first three "prongs" are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (internal citations omitted).

First, the Court must examine whether Plaintiff's report to Defendant was made pursuant to his official duties. *Brammer-Hoelter*, 492 F.3d at 1202. "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Id.*

Viewing the facts in the light most favorable to the Plaintiff and without making any determinations as to whether a genuine issue of fact exists, the Court concludes as a matter of law that Plaintiff's report to Defendant occurred within the course of his official employment responsibilities based on the undisputed facts concerning the context in which the conversation arose. Plaintiff's primary duties, as delineated by the Drug Court Coordinator Job Description included: supervising and assisting in the training and evaluation of ACADC staff; supervising and monitoring the performance of assigned personnel; ensuring departmental compliance with federal and state statutes, regulations, and local policies and procedures; and, perhaps most importantly, developing and administering the departmental budget and monitoring expenditures.

Moreover, Plaintiff stated in his deposition that he felt that "it was [his] obligation to bring [the alleged misappropriation of funds] to the attention of the prosecuting attorney who also was my supervisor." Defense counsel then asked a clarifying question: "And did you believe that, for want of a better term, that was your job to do that?" Plaintiff responded by saying, "Exactly. Yes. I mean, we're dealing with grant funds. State funds." ECF No. 19-2 at 11.

In *Battle v. Board of Regents*, the Eleventh Circuit "held that a relatively low-level university employee who reported improprieties in a supervisor's handling of federal financial aid funds was acting within the scope of her duties because, as a financial aid worker, the plaintiff had a duty under federal guidelines to report any suspected fraud associated with federal financial aid funding." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1332 (10th Cir. 2007) (citing *Battle v. Board of Regents*, 468 F.3d 755 (11th Cir.2006) (per curiam)). The Tenth Circuit found *Battle*'s reasoning persuasive, and it held that a local Head Start executive director was acting pursuant to her official duties when she reported the local school board's lack of

compliance with federal regulations to federal authorities. *Casey*, 473 F.3d at 1331-1332. In that instance, she had an obligation as part of her job description to report noncompliance with federal regulations. *Id.* at 1330. The Head Start executive director had also directed her concerns to her supervisors, and the Tenth Circuit again found that she was acting pursuant to her official duties. It was only when the executive director went completely outside of her chain of command and reported her suspicions to the New Mexico Attorney General that the Tenth Circuit found her speech as falling "outside the scope of her office." *Id.* at 1332-1333.

In the instant case, the Defendant was the Plaintiff's direct supervisor. His job description included supervising his subordinates, ensuring compliance with applicable statutes and regulations, and monitoring budget expenditures. He suspected that his subordinate was embezzling or misappropriating state funds, and he brought his concerns to his supervisor, the Defendant. His action seems to fall squarely within his official duties. Thus, his report to Ms. Stone did not enjoy First Amendment protection, and therefore none of Defendant's "alleged actions related to this conversation could have violated Plaintiff's right to free speech." *Hesse*, 541 F.3d at 1250. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's § 1983 free speech claim is therefore **GRANTED**, and Count 2 of Plaintiff's Complaint is **DISMISSED.**

### III. Defendant's Qualified Immunity Claim

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). In this case, the Court finds that the Defendant did not violate a constitutional right; therefore, it is not necessary to examine whether that right was clearly established.

## CONCLUSION

For the reasons delineated above, the Court finds that Defendant's motion for summary judgment, ECF No. 18, should be **GRANTED** and Plaintiff's § 1983 claims for violation of his Due Process and First Amendment rights should be **DISMISSED**. It is therefore **ORDERED** that summary judgment be entered in favor of Defendant on all of Plaintiff's claims.

Dated this 11th day of December, 2013.

Alan B. Johnson
United States District Judge